received we call the next case number 20-307 34 Anthony Allen at all versus state of Louisiana at all mr. McPhee thank you your honors and may it please the court it can only be one map containing the districts from which the Louisiana Supreme Court justices are elected the current map is a product of the Eastern District of Louisiana and I will note that in 2012 the Eastern District emphatically asserted that it had continuing jurisdiction over the case despite the existence of the decree and despite the fact that Judge Morgan Eastern District had emphasized that she retained jurisdiction the plaintiffs went to the Middle District of Louisiana and they claimed that the current map violates the Loading Rights Act even though it is the product of the consent decree that is being supervised by the Eastern District over the state's motion to dismiss the district court agreed that it had power and jurisdiction to consider and to redrop the map to consider the case and redraw the map if there was indeed a VRA violation that was error only the district so I've read judge to gravels order he says it's a closed case I tend to agree let me ask you this what you say there must be one map the the point of the Chisholm V. Romer was the map of the Louisiana Supreme Court the point of this lawsuit is the map I get that I get that because in some sense the districts are interrelated practically speaking though help me with this just from a practical common-sense point of view the point of Chisholm V. Romer was the one multi-member district that was allegedly diluting black voting strength and there's a change in that now it's two single-member districts the point of this lawsuit is the first district the one around Baton Rouge that's really the target so my sense from judge to gravels order is look yeah there might be some theoretical overlap in the lawsuits but the practical impact of the first one was Orleans this one's about Baton Rouge what's I mean what's the response of sure your honor I think that judge to gravels order certifying the interlocutory appeal maybe walk that back a little bit in fact at one point he even says that the effect of the relief requested by plaintiffs in this case the net effect is identical to the relief requested in the eastern district which is a redrawing of all seven maps of all seven districts and so I was I was troubled by that too a little bit let me ask you this though what I don't know if if you know this or if this is even a fair question but I'll ask it anyway in the first in the Chisholm lawsuit that resulted in turning the one multi-member district into two single-member districts did that involve redrawing just those two or did it involve some kind of adjustment of the entire map it did I believe necessarily implicate the entire map to some degree and and it wasn't even just those districts there's an amendment to decree and there it actually also split it wasn't just the Orleans parish but there was another district that was also at play and that's sort of the nature of district district of redistricting generally is just that you can't draw you can't change the map without affecting the other districts so then again again I go to practical effect so so imagine we have litigation the middle district on this claim and let's say the plaintiffs win then as a question of remedy we have to we would have to figure out how to redraw right and and theoretically you're going to have two maps and see who would do that redraw well presumably the court would enter in a new map that we would be required to follow wouldn't the court ordinarily has to give the legislature a shot at it before it attempts to take pain in hand doesn't that's true your honor and that is what we saw in the last round of litigation and Chisholm and the legislature did do that there was sort of a temporary relief that was agreed to by the parties but yeah I believe that was act 5 does I understand that there's never been any reapportionment of these judicial district right I believe that the map is the same from 1997 but there could have been right yes there there would have needed to go and seek clearance from the Eastern District on that though but I would like to turn I think it's important to note that consent decrees are different consent decrees are they implicate let's say the highest and most essential principles of comedy and judicial administration that there that exists in the federal judiciary this is not the first time that one district judge has attempted to modify a consent or an order from another judge in fact the principles at play here are much older than even this litigation which is long-standing this goes all the way back to English common law where under the writ of forgive my Latin Aditya Karela there was of course the ability for one court for a court to modify its its order if necessary but the rule then was that only the court that issued the order could modify and of course rule 60 of the federal civil rules procedure did away with Aditya Karela and those doctrines but we still see today district judges attempting to modify each other's order or to issue dueling injunctions that sort of thing and there's the state of Louisiana ever tried to modify the consent decree or I believe so your honor I believe we could go in and seek or the plaintiffs could if they wanted to to bring this action in the middle district can we go back to the way you started this this particular line of discussion which is that the consent decrees are different it strikes me that a consent decree is a settlement agreement with continuing jurisdiction but it's at root perfect so it's a settlement agreement between two parties 50 years ago it's a contract so my question if you're with me so far is could two parties 50 years ago enter into a contract that would say previous to future disputes either between us or third parties can be brought in federal district court even when the amount in I believe the answer is no of course not because 1332 provides jurisdiction only where the amount in controversy is $75,000 or more so I don't understand how a contract between two parties long gone 50 years ago can oust jurisdiction under 1331 yes and this this goes to we're not saying that that okay so I don't think I don't take your honors question to be is this preclusion it's not but what it is is that there is this sense of comedy and judicial administration our we cited Thagard v. City of Jackson and and I'm coming to answer your questions your honors question and footnote three for this proposition that only the district court supervising implementation of decree should have subject matter jurisdiction to modify the decree and then because Thagard was later overruled by the Supreme Court Martin v. Wilkes under sort of the reverse discrimination excuse me under preclusion principles but that footnote three that says that there is no more that you don't have subject matter jurisdiction that was not overruled I believe by Martin v. Wilkes and we can see that because the Tenth Circuit well excuse me that Thagard was citing a First Circuit case called Colbreth v. Dukakis and the Tenth Circuit just very recently cited Colbreth in a case called Navajo Nation v. San Juan County and said quote when a court accepts a consent decree and enters an jurisdiction over the matter as here if it does so other courts necessarily lack subject matter jurisdiction oversuits seeking to modify that decree and how in the world could that apply to third parties not so I it strikes me that it's very interesting as to between the original signatories of the Chisholm consent decree right and that's the hypothetical we just went through about diversity jurisdiction it's a whole nother thing it's a whole nother inferential leap to say that parties 50 years ago not before our court can oust because we would agree right that there is 1331 jurisdiction absent the consent decree it's clearly arising under federal law and the Constitution laws of the United States okay so it's clearly 1331 jurisdiction in the Middle District over the dispute absent the consent decree but the theory must be that somehow the consent decree from 50 years ago affects a plaintiff not a right and I really think that the the answer is that it goes to the court's power over its own jurisdiction it sort of sucks all the oxygen out of the room at least for consent decrees now here's a question how about this let's make it really concrete to this kind of dispute could a district judge in the District of Columbia in an APA suit right so it's it's a suit against a federal official under the Administrative Procedure Act regarding some kind of whatever let's say an EPA action enter a consent decree with the Environmental Protection Agency and say all future EPA suits must be brought in DDC it cannot be brought in any other district court notwithstanding all of the other jurisdictional provisions passed by Congress could that could they do that if a plaintiff and the EPA agreed we're just gonna do all of these and not understanding what Congress says yes and then maybe yes because of really maybe the court's own power over that would would suck all the oxygen out of the room what is what is the point of what Congress is doing in this in the jurisdictional statutes I mean because that you know the Hobbs Act the APA I mean there's all kinds of these statutes that Congress has passed and been around as long as administrative agencies have and they don't say that in fact Congress does have provisions where mandatory jurisdiction applies for petitions for review but I guess they're just empty text in the US Code if parties can just agree privately and find a district judge who would do it to do it a different way the point is well taken your honor so let me to sort of explain why I think consent decrees are different and where there is considering jurisdiction let me fall back a little and acknowledge that the Ninth Circuit and in Rule 60p said that it wasn't going to go quite so far as to say that there was no jurisdiction in a case called Lappin v. Schulte it didn't go that far in first Rule 60b and I think that there's a difference between a Rule 60b if I get an order in one district court and I I go and I file a Rule 60b motion in another district court asking to change that the Ninth Circuit wasn't quite willing to say that there was a jurisdictional bar it did analyze it under an abuse of discretion standard and under the abuse of discretion standard but but it said the standard is very high it's pretty much insurmountable it's pretty much always going to be an abuse of discretion for one court to assume jurisdiction under those circumstances here and I do think consent decrees are different but I will say that there is another case out of the Fifth Circuit that suggests that it's not quite clear whether or not it's a jurisdictional bar or if it's an abuse of discretion standard sort of like the one that the Ninth Circuit adopted in Lappin. I think that this court's jurisdiction or that this court's case law is a little unclear on that point and so if I were writing the opinion I might do what this court did in footnote 2 of excuse me West Gulf Maritime Association the ILL ILA deep sea local 24 South Atlantic and Gulf Coast district of ILA in footnote 2 there it said the standard isn't clear whether or not when comedy issues are at stake whether or not it's a jurisdictional bar or whether or not it's an abuse of discretion standard but we'll leave that for another day because here it's clearly an abuse of discretion and I would say that the same is true in this case it's clearly an abuse of discretion. Is it the state's position I assume it's the other I don't know if it's the other side's position is this a state's position that this Chisholm consent decree is still in force it has not concluded by its own terms? It is the state's position your honor and I believe it is also opposing they sort of suggested pages 12 and 13 of their yeah the reason I mean the reason I ask is is I understand it everything's what is left to be accomplished in the Chisholm v. Romer consent decree I understand why the 2012 it was reopened if that's the correct word because we had a dispute over the terms of the decree and how they applied to the tenure of the soon-to-be Chief Justice Johnson so I get that we had to it's been accomplished. The answer to that question I'd refer you to their brief at footnote six where they acknowledge that the legislature could not say remove the majority minority district from New Orleans now without violating the decree. Okay well I will ask them about that do we have any more questions? Thank you you'll have rebuttal time. Mr. Shaw May it please the court. Counsel for the state has spent a lot of time focusing on the issue of comedy but the plaintiffs would submit that that's really not at play here at all and I'll begin by answering the question that Judge Duncan had just posed which is what remains to be done with respect to the Chisholm decree well in fact the Eastern District answered this question in the 2012 case if you look in the record at page 290 I'm sorry page 246 in the record that's where the the original Chisholm decree discussion discusses that the the court the Eastern District shall retain jurisdiction until the implementation of what it described as the complete implementation of the final remedy. That was discussed in Chisholm v. Jindal and the court said there and I'm going to quote here because as will be explained in the pages to follow the court finds that the consent judgment calls for Justice Jindal. There were terms in the original consent decree that talked about I don't remember what it was the emoluments of the office or something like that and so that so when the question of her tenure on the court arose because she was she was on that court as a result of the consent decree in one way or the other we had to figure out whether she was entitled to be Chief Justice or not. I get that. What I'm saying is what's left to be done. I mean we've the legislature has changed that there's single-member districts there's a majority-minority district. She's was Chief Justice. She's not on the court anymore. What's left to be done? Why is why would anybody say that it's not terminated? Judge Duncan our position is that there is nothing more to be done but that the Chisholm decree does remain in effect insofar as the state could not go and say eliminate the majority-minority district that was created by that legislation and as the court said in Chisholm v. Jindal it retained jurisdiction quote until that final remedy is implemented and that final remedy being the calculation of Justice Johnson's tenure so the court has already acknowledged. Do you know as a factual matter I know it's reaching far back in the past but in Chisholm v. Romer the consent decree asked us to the council for the state the relief there was to take the multi the single multi-member district that was diluting black voting strength and to form two single-member districts right one of which was going to be a majority-minority district. Did that relief involve you know fiddling around with all of the other districts in the state did just as a factual matter or did it was it targeted at Orleans Jefferson Parish? Judge Duncan the the map has not changed as far as I'm aware since 1999. It's current since that time. I do not know and I don't think it's in the record whether any of the boundaries for the other judicial districts might have changed at that time. We understand why I'm asking right because let me make it clear if the consent decree involved all of the districts in some way as opposed to just this more narrowly focused question then I understand the state's argument that somebody has now brought a lawsuit with respect to a different judicial district but inevitably as we litigate that and come up with a remedy we're going to affect the map. So how can we do that outside the consent decree if it's still in effect? Well your honor the answer is simple is that the decree simply does not do that and all of the decree if you look in the record beginning on page does not do what? It does not implicate all of the districts throughout the state because if you look at if you look at the language of the consent decree in the first paragraph this is in the record at page 239 it starts right out talking about Orleans Parish and in fact if you go back and look at the 1987 or 88 complaint that was filed it was on behalf of all blacks registered to vote in Orleans Parish. All of the relief described in the consent decree relates to Orleans Parish what is now split between districts 1 and district 7. Well when the state finally in 1998 passed Act 776 that created the map that we now that we now have it it actually did not comply exactly with the original terms of the it remains you know that if you look at the decree it definitely pertains to Orleans Parish. You could consider an example where the state of Louisiana in the due course of governance had decided we're going to change the boundaries in say districts 4 and district 2 in the western part of the state around Shreveport. Well there's nothing that would prevent the state of Louisiana on the face of this the Chisholm decree from saying due to demographic changes we need to shift the boundaries say between districts 2 and 4. Would the plaintiffs to the Chisholm litigation have an opportunity or any basis in that instance to go back to the eastern district and say we don't like it that you have changed the boundaries between districts 2 and 4. Well of course not and that's because this idea that we're talking about a map is a bit fictitious. What we're actually talking about is voting rights and the map of course must exist but the court or the state can change the map as it so pleases. Well as the middle district correctly found we believe in this instance it can look at the map and say we're gonna we're gonna alter the boundaries of what is now district 5. Well that may necessitate moving one or more precincts from some neighboring some neighboring district into or out of district 5. We don't know what that will look like but what we do know is that the only way the state of is if it eliminates the majority-minority district that was created by that decree so many years ago. Gravel seemed fairly confident in its order that any remedy in this case could not affect the districts at issue in the Chisholm decree. I mean is that I mean we can't really take that at face value it's sort of predicting the future but I mean is it possible that a remedy if you win in this litigation the middle district that the remedy will inevitably have to affect the Orleans Parish District. I mean you have to redraw the map. You have to redraw 5, number one, right? Isn't that the district we're talking about? District 5 is the district in and around Baton Rouge. Sorry, District 5. Yeah, you'd have to redraw it somehow, right? That's correct, your map between districts 5 and districts 1 and 7 here at Orleans Parish. It is possible that some of the boundaries could change but again going back what happens though if they change in such a way that may affect the population and in the districts that are involved in the Chisholm decree? If they change in such a way that the majority-minority district still exists which is now district 7 then there would be no basis so again a slightly different hypothetical. You could imagine Orleans Parish is split between district 7 and district 1 but you could imagine that again in the due course of its governance the state of Louisiana says due to changes in demographics we need to peel off a couple of precincts from district 1 and put them in district 7 but we're gonna keep district 1 as a majority-minority district. What basis would the people in that precinct who had moved from district 1 to district 7 have to complain so long as the you know we don't we won't know how many precincts if any would be pulled out of Orleans Parish and it could still be majority black but if you reduce the percentage of majority black, blacks have a really good argument that it violates their rights. I mean to me the problem was saying oh look we can do this without interfering with Orleans Parish is we don't know how how the district would be drawn. How would the let's say let's say we let Judge Gravel proceed with the case you know I suppose he would have to give the legislature a shot at drawing the lines. We don't know what the legislature would do so how do we know that you would wind up with a district that didn't impinge on the majority black district in Orleans? Judge Davis it's correct that we don't know and by the same token we don't know as the state asserts that there inherently will be a conflict between something that Judge DeGravel may do in the Middle District and something in the Chisholm Decree. That's what the state is saying here. The state is essentially arguing and I believe counsel alluded to this earlier that in perpetuity the state of Louisiana can never move a single boundary as it pertains to the election of justices to the Supreme Court to the state of Louisiana without the permission of the Eastern District but again that's that's not only inconsistent with the language of the decree it's just absurd to think that the state can't move around or shift around districts and that whatever it does as a result of this litigation as a conflict with the Chisholm Decree. Yeah I don't see theoretically anyway how the plaintiffs in your case are damaged. They can go they have a remedy they can go to the Eastern District and get their remedy. So why would she why would we want to allow for the possibility that that it would impinge or interfere with the districts in Orleans Parish? I mean what's the reason we would do that when your clients have a . . . the state has a perfectly good remedy in the Eastern District. Judge Davis the the burden we would say is on is on the state actually to demonstrate why the plaintiffs are denied their choice of forum. The individual plaintiffs in this case reside and vote in East Baton Rouge Parish. They're they brought this action which as Judge DeGravelle found in his the district in and around Baton Rouge. So I think the answer to your question is what would be so difficult for the state of Louisiana because actually the only party to this litigation with plenary power to violate the Chisholm Decree is the state and we take them at their word that they don't intend to do that. So what would preclude the state from saying we agree to litigate this case in the Middle District where the plaintiffs reside where in fact they with if you look at 28 U.S.C. 1391 the venue statute that's where the the right is being violated. So why couldn't the state of Louisiana which is seated in Baton Rouge let the litigation proceed there because the state they can't know. I mean I think you have to admit that there's a potential for violating the decree the consent decree and why should we live with that. I mean it's just most of the cases when there's that potential it goes back to the court that issued the consent judgment. Why shouldn't we just follow that general rule. Judge Davis there is a potential even if this lawsuit had never been brought that the state of Louisiana could decide that it's going to do away with the majority minority district that is now District 7. If it did that we don't deny that the state would be in violation of the Chisholm Decree. I mean so there's a possibility that a remedy might interfere with the decree. You don't deny that. I don't I don't see it. Judge DeGravel was very confident that it wouldn't but we seem to be in a state of uncertainty on that so the question is you know how do we decide the case. I mean it's as you just pointed out it's not a question of denying jurisdiction to bring a Voting Act. It's effectively a venue as I understand it. So what should we look to then? I mean should we look to the terms of the consent decree and can we confidently say by reading the terms of the consent decree that it has nothing to do with the litigation here with respect to a different district. Yes Judge Duncan you should look to the terms of the consent decree and again just going back to the sort of foundational principles. Why did Judge DeGravel say later that the net effect of your lawsuit is identical to the consent decree, to the relief sought in the consent decree? What does he mean by that? Judge Duncan my understanding was that he meant simply that as our complaint alleges at paragraphs four and five that we would be creating the state's second majority minority district. So the relief is the aim of this litigation is to create a majority minority district but not at the expense of getting rid of the first one. It would be a far cry for the NAACP to come into court and say we want to create a majority minority district but get rid of the other one. That would obviously be pointless to do. So I think that's what Judge DeGravel meant by that and he recognizes that the aim as expressly alleged in the complaint is for the state of Louisiana which is made up of approximately 30 percent black voters but has only about 14 percent representation. If you look at the. You know as a matter of fact it's probably not in the record in this case but maybe it's in the complaint. Where are the population clusters in Louisiana that make up that 30 percent of African-American voting? I mean where generally are they in the state? The primary population clusters your honor are in the area of New Orleans and Baton Rouge. Those are the two primary areas in my understanding. And the remedy that I know you don't specify a remedy specifically in your complaint at least I don't think you do. What is what is the kind of remedy that would be envisioned if you win this lawsuit? Your honor the remedy would be to to create for the state through the legislature as Judge Davis mentioned to create a second fairly drawn majority minority district in and around Baton Rouge and what is now District 5. And what happens to the space in between the population center that you would use to create the majority minority district in Baton Rouge and the one that exists already in Orleans Parish. What happens to that? You have to shift that around right? The borders. No not necessarily. Well you could you could shift some. So I mean without being a demographics expert you know in how the population looks and of course there's going to be you know census data that will indicate that we don't know exactly where the borders will shift. I mean you might imagine for example that in the western part of the state the borders don't need to shift. I mean we don't have a way to say that right now and to predict that. But again you mentioned that you know we would say that there's a possibility that the decree will be you know impinged upon by any relief we get out of the middle district. Well no. The only the only possibility that we see that would impinge upon the Chisholm decree would be for the state to outright eliminate that district. That's not on the table. That's that's obviously not on the table. We're talking about a shifting of the boundaries and in order to make a new majority minority district and imagining what effect that would have on the Chisholm district. And you're saying you're saying there's no possibility. Your Honor we allege in the complaint that there is at least one way to redraw the lines such that District 7 is not impacted. And that of course would be a focus of a trial on the merits. And we've alleged that and Judge DeGravelle acknowledged that. So we believe that there is at least one way. We have grounds to allege that. And again even if there was some minor modification to District 7 here in Orleans Parish there's no reason to think that the question I mean if there's some minor modification to District 7 and that implicates the Chisholm decree that everybody agrees it's still it's still in force. You know why it's in force I couldn't tell you. Go ahead. As you well know the only black congressional district in Louisiana includes a great big group of precincts in East Baton Rouge. So in the legislature's wisdom that's the way they drew that one. You know we don't know if they'd do the same thing or a similar thing but we know that's what they did in drawing the majority black congressional district. That is correct Your Honor. And again we don't know we don't know what the legislature would do. What we do know is that the plaintiffs in this case are not a part of the are not a part they are definitely third parties to the litigation the Chisholm litigation. They are not all all blacks registered to vote in Orleans Parish. So to the extent someone might have the ability to challenge something about the Chisholm decree it would be the members of that class. Well as the Supreme Court held in Martin V Wilkes there's no basis to believe that our plaintiffs who seek different relief who reside in a different part of the state who vote in a different part of the state should be precluded from bringing their case in a form of their choice when there's no there's no evidence that we're seeking to attack that decree. The Wilkes case Judge Duncan involved essentially employment. It was a group of members of the district. I understand the general principle in that case, it's just voting rights litigation is much more complicated than that. Counsel can I just back us up for a second to make sure that we're all focused on the right case. The way I understand what happened is that there was a 12b1 motion and a 12b6 motion decided by Judge Gravel certified for nothing to do with the merits, has nothing to do with what the boundary lines are eventually going to be look like years hence. The question is whether there's subject matter jurisdiction or 12b1. There's no 12b3 motion for improper venue in the middle district and there's a 12b6 motion for failure to state a claim. Is that correct? Yes that's generally correct Judge Oldham except that the 12b6 motion wasn't appealed. So we're here on the . . . So it's just 12b1. So the only question is if I'm understanding that correctly is there subject matter jurisdiction in the middle district of Louisiana for your complaint? Yes that is correct. Okay so it's really it boils down to there's clearly subject matter jurisdiction under 1331. Everyone agrees, rising under the laws and treaties of the United States and can a consent decree abrogate an act of Congress? Yes that is correct. Okay so . . . Judge Duncan, it does still exist because that district was created as a result of that litigation but I see my time has run out. Thank you. Reba. Your Honor, just really quickly I want to say that a Judge de Gravel's order in the record 568 to 570 sort of explains how the consent decree is implicated by the relief that the plaintiffs are seeking here and Judge I would say that there's a case in the Fifth Circuit that says it's called Gregory Portland Independent School District, the Texas Ed Agency, and it does come pretty close to laying down a jurisdictional bar when the comedy issues are at play. It's comedy between two federal district judges without regard to comedy between the judicial branch and Congress? Correct. Okay. Yes and and it's the Orderly Administration of Justice that seems to be . . . so the court might be bound simply by precedent on that point but if but there is some questions I pointed to the other case that suggests that maybe it's an abusive discretion standard. So let's just assume for the sake of discussion that it is a jurisdictional rule. Let's just assume for the sake of discussion that we're bound by the rule of orderliness to so hold. Let's further assume that in determining whether we have 1331 jurisdiction in the Middle District the way to do that is to just assume there's going to be a conflict between whatever remedies ordered in the Middle District and the Chisholm consent decree. Could the state not fix all of that by literally moving under Rule 60B tomorrow and say this potential exists, there's obviously subject matter jurisdiction in the Middle District and that's what makes it impracticable for us to have a continuing 50-year-old consent decree signed by people who have long left office. Would that fix it? I believe it would. I believe that we could do that but plaintiffs could also do that or they could and so because they could also do that . . . I'm sorry, the plaintiffs in this case could or the plaintiffs in the Chisholm case could? I believe the plaintiffs in the Chisholm, in this case, could move to intervene. The state has already stipulated that it would not object to that. So they could move to intervene in the Eastern District and then move under Rule 60 even though they're not parties to the consent decree. Just initiate a new lawsuit. Once they closed that case, then they could then of course they can initiate a new lawsuit and there would be no problem there. The difference between this case and Martin v. Wilkes, they did try to intervene in Martin v. Wilkes. The white firefighters tried to intervene in the case where there was a consent decree and the court said, no, sorry, it's too late, you can't intervene. Suppose the plaintiffs, you said you stipulated that you would allow them, you wouldn't oppose their intervention. Would you oppose their Rule 60b motion? If they moved here in the Eastern District. So I understand what you're saying is that if they move to intervene in the Eastern District, the state of Louisiana would say that's fine, welcome to the Chisholm party and then my question is when they then file the Rule 60b motion to dissolve the consent decree, would the state oppose that? Not to the extent that if they were trying to argue that the case was final, that the Chisholm decree was done. No, of course not. And then they can bring their claims and we have no problem with that. But what the state doesn't want to happen is it doesn't want to be bound by two different federal district court orders that require different maps. I'm surprised by that answer because it seems like if the state doesn't care whether the consent decree stays or goes, then how in the world can it be an obstacle to a 1331 jurisdiction in the Middle District? Now we're only talking about who is the movant, but it would be a joint motion either way. Either the state could do it without, you know, with the help of the plaintiffs or the plaintiffs could do it with the support of the state. Either way, the consent decree goes away and this is all over. Correct, but now since the since the decree is live, at least Judge Morgan told us that it was still live and in effect, and now Judge DeGravo is saying that he has jurisdiction to amend the map or to change things, then the state is stuck in a very sort of precarious position. But I agree with you that if we just simply moved, but if it is a jurisdictional issue, of course, then this court should simply dismiss. And I just, if it is an abusive discretion standard, though, I do want to say that where there is a remedy, as Judge Davis mentioned, and where they could intervene and there's no problem and the litigation has been going on for years and years, the expertise is there. There's no reason why. It is absolutely an abusive discretionary case. Case is under submission. That concludes our oral arguments for the day and this panel.